**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 94-5700

MICHAEL KOKOSKI,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Elizabeth V. Hallanan, District Judge.
(CR-92-90)

Argued: February 2, 1996

Decided: April 17, 1996

Before WIDENER, WILKINS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**COUNSEL:** David L. White, BRUMFIELD & WATSON, Bluefield,
West Virginia, for Appellant. Miller Allison Bushong, III, Assistant
United States Attorney, Charleston, West Virginia, for Appellee. **ON
BRIEF:** Rebecca A. Betts, United States Attorney, John C. Parr,
Assistant United States Attorney, Charleston, West Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Michael Kokoski conditionally pled guilty to knowingly and intentionally employing a person under age 18 to distribute lysergic acid diethylamide (LSD). See 21 U.S.C. §§ 841(a)(1), 861(a)(1). He was sentenced to 144 months imprisonment. On appeal Kokoski argues that (1) the determination that he was competent to stand trial was clearly erroneous, (2) the procedures used to determine his competency violated due process, and (3) the denial of a three-level reduction under USSG § 3E1.1 for acceptance of responsibility was erroneous. Finding no error, we affirm.

I.

On July 14, 1992, Kokoski was indicted for conspiracy to distribute and possession with intent to distribute LSD and marijuana, see 21 U.S.C. § 846, two counts of distributing LSD to an individual under age 21, see 21 U.S.C. §§ 841(a)(1), 859, and employing a person under age 18 to distribute LSD, see 21 U.S.C§§ 841(a)(1), 861(a)(1).

On September 8, 1992, Kokoski's counsel moved for a pretrial mental competency evaluation. The court granted the motion and Kokoski was sent to the Federal Correctional Institution at Butner ("Butner") for a thirty-day evaluation. Byron Herbel, M.D. and Rushton A. Backer, Ph.D. staff psychologist, completed a report concluding that Kokoski was suffering from an unspecified psychotic disorder that rendered him incompetent. However, they said there was a "substantial probability that Mr. Kokoski's competency can be restored with treatment," including administration of antipsychotic drugs.

On November 5, 1992, the district court held a competency hearing and, based on the Butner staff conclusions, committed Kokoski to

2

Butner for a four-month treatment period. In February 1993 Butner began administering Kokoski antipsychotic medication. On March 1, 1993, the court granted Butner's request to extend the treatment period an additional four months based upon the facility's representation that Kokoski would attain competency. On June 7, 1993, Dr. Herbel and Dr. Backer completed another report. Although it again concluded that Kokoski was not yet competent, it opined that there remained a "substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed." On July 11, 1993, the court held another competency hearing and ordered Kokoski returned to Butner for further treatment.

Butner certified Kokoski as competent on September 24, 1993. The treatment team stated that "the antipsychotic medication that he is currently taking appears to be helpful to him." It also said that "the primary diagnosis is now listed as Malingering." Counsel for Kokoski challenged the competency finding and requested the opportunity to depose Dr. Herbel and Dr. Backer. The district court granted the request.

On November 18, 1993, the district court reviewed the deposition transcripts and conducted another competency hearing. The court determined that the depositions were "inconclusive and not very helpful because it was unclear whether the defendant's competency was restored as a result of the antipsychotic drugs and whether he would be competent to stand trial without the benefit of the drugs." Because it was unable to reach a decision, the court again ordered Kokoski to be evaluated, this time with a "clean slate." He was committed to the Federal Medical Camp Rochester where he was evaluated by M. A. Conroy, Ph.D., who was not furnished with Kokoski's records from Butner. Dr. Conroy found evidence of a long-standing thought disorder and evidence of malingering. Dr. Conroy concluded that the weight of the evidence supported genuine mental illness and declared Kokoski incompetent.

At still another competency hearing on January 28, 1994, the court approved the United States' request to have the case reviewed by an expert in the field of malingering. The court invited Kokoski to select his own expert, but he did not do so. The government's expert, Rich-

ard Rogers, Ph.D., rendered an opinion that Kokoski was competent to stand trial and that he was malingering.

On March 30, 1994, the court conducted its final competency hearing at which all doctors who had evaluated Kokoski since September 1992 testified. Dr. Herbel testified that Kokoski had been malingering. Dr. Backer said that Kokoski was competent to stand trial, with or without medication, and that Kokoski's malingering had fooled the Butner team for some time. Dr. Conroy testified that she found evidence of incompetency and malingering, but that the preponderance of the evidence suggested incompetence. Finally, Dr. Rogers concluded that Kokoski was malingering and that if Kokoski suffered from a coexisting psychological disorder, it was not significant enough to impair his ability to stand trial. He also concluded that Kokoski was competent without medication.

In a thorough opinion, the district court concluded that Kokoski was competent and that he was malingering. United States v. Kokoski, 865 F. Supp. 325, 330-36 (S.D. W. Va. 1994). The court believed that Kokoski's behavior was a "scheme devised by him to avoid going to trial or accepting responsibility for his conduct." Id. at 338.

On the day of trial, Kokoski conditionally pled guilty to knowingly and intentionally employing a person under age 18 to distribute LSD. At Kokoski's sentencing the court concluded that Kokoski had not accepted responsibility for his actions. The court found that Kokoski had intentionally faked his illness in order to avoid responsibility for his crimes and that he had shown no remorse. The court sentenced him to 144 months imprisonment. This appeal followed.

II.

Kokoski first contends that the district court erred in finding him competent to stand trial. He insists that the court failed to appreciate that malingering and mental disorders can and do coexist. Thus, despite evidence of malingering, Kokoski says he was nonetheless incompetent to stand trial. We disagree.

4

A defendant is competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and [ ] has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960).**1** The district court's competency finding will not be disturbed unless clearly erroneous. United States v. Hogan, 986 F.2d 1364, 1372 (11th Cir. 1993).

Here, all four doctors who testified at the final hearing offered evidence of malingering. Dr. Backer and Dr. Rogers testified that they believed Kokoski was competent without medication. And Dr. Rogers testified that even if Kokoski suffered from a mental disorder that coexisted with his malingering, the disorder was not substantial enough to render him incompetent to stand trial. We think this testimony amply supports the district court's competency finding.

III.

Kokoski argues that the district court's failure to adhere to 18 U.S.C. § 4241 and related statutory provisions denied him due process of law. Section 4241 prescribes procedures for determining a defendant's competency to stand trial.**2**  Kokoski cites four errors which we address in turn.

_____

**1** This is also the standard for competency to enter a guilty plea. Godinez v. Moran, 113 S. Ct. 2680, 2685 (1993).
**2** The statute reads in pertinent part:

> § 4241. Determination of mental competency to stand trial

\* \* \*

> (d) Determination and disposition.--If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility--

5

He first argues that § 4241(d) limits the time he may be hospital-ized to eight months: "a reasonable period of time, not to exceed four months" and "an additional reasonable period of time," which he says is also limited to four months. See #8E8E # 4241(d)(1) & (2). We reject this argument. We think "an additional reasonable period of time" means some reasonable, but statutorily undefined, period of time. United States v. Ecker, 30 F.3d 966, 969 (8th Cir.) cert. denied, 115 S. Ct. 679 (1994). Here, we find that Kokoski's eighteen-month confine-ment was reasonable. Every report issued before the Butner staff declared Kokoski competent indicated that he was likely to regain competency. The final six months of his confinement were necessary to challenge and clarify Butner's conclusion. In light of the district court's careful adherence to statutory procedures, we believe that

_____

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a sub-stantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed; and

(2) for an additional reasonable period of time until--

(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial proba-bility that within such additional period of time he will attain the capacity to permit the trial to proceed; or

(B) the pending charges against him are disposed according to law;

whichever is earlier.

If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to per-mit the trial to proceed, the defendant is subject to the provisions of section 4246 [which prescribes steps to be taken if a defendant has not been found competent].

(e) Discharge.-- When the director of the facility in which a defendant is hospitalized pursuant to subsection (d) determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. . . .

6

Kokoski's confinement was reasonable. See id. (confinement during seven competency evaluations spanning nearly four years not unreasonable).

Kokoski next argues that the district court failed to make findings, prior to several confinements, that "there [was] a substantial probability that . . . he [would] attain" competency. § 4241(d)(2)(A). The findings that were made, he says, lacked factual support. He also argues that he was entitled to a § 4246 hearing because no forensic report stated that his condition was improving. We reject these arguments. Each time the district judge committed Kokoski, she relied on forensic reports written by qualified personnel stating that there was a substantial probability of future competency. In addition, the Butner reports indicated that Kokoski's condition was improving. The requirements of the statute were therefore satisfied.

Next, Kokoski argues that § 4241(e) requires issuance of a certificate of competency. He claims that the certificate Butner issued was "invalid" because the competency finding was contingent upon Kokoski's treatment with antipsychotic drugs. We reject this argument because at the final competency hearing, the Butner doctors testified that Kokoski was competent with or without medication. Moreover, based on all of the evidence at the final hearing, the district court issued a written order that Kokoski was competent. That was sufficient to allow the case against Kokoski to proceed.

Finally, Kokoski argues that the court had no authority to authorize the government to hire an expert in the field of malingering because the examiner "shall be designated by the court." § 4247(b). This argument is meritless. The statute does not require the judge to personally select the examiner. In any event, Kokoski was not prejudiced since the court authorized him to select his own expert.

In short, we conclude that the district court adhered to statutory procedures and that those procedures afforded Kokoski due process. See Ecker, 30 F.3d at 969-70.

IV.

Finally, Kokoski argues that the district court improperly denied him a three-level reduction of his offense level for accepting responsi-

bility for his offense. See USSG § 3E1.1(b). He insists that the district court's finding that he faked mental illness is unsupported by the evidence. We disagree.

A court may reduce by two levels the offense level of a defendant who "clearly demonstrates acceptance of responsibility for his offense." USSG §3E1.1(a). Certain defendants may receive an additional one-level reduction if they "assisted authorities in the investigation or prosecution of [their] own misconduct." USSG §3E1.1(b). The district court's denial of a reduction under §3E1.1 cannot be disturbed unless clearly erroneous. United States v. Cusack, 901 F.2d 29, 31 (4th Cir. 1990). In this case, Dr. Herbel testified that Kokoski's malingering was an effort to avoid going to trial and receiving "a potentially long sentence." In addition, the district judge found that Kokoski had shown no remorse. At the sentencing hearing, Kokoski adhered to his belief that LSD in any amount is nontoxic, nonaddictive and nonlethal. The district judge concluded that "these beliefs are certainly not indicative of a person who recognizes that he committed a wrongful act and must be punished." The record simply does not establish that the district judge's decision to deny an offense level reduction was clearly erroneous. See United States v. Kerr, 13 F.3d 203, 205 (7th Cir. 1993), cert. denied, 114 S. Ct. 1629 (1994).

V.

The district court's judgment is affirmed.

AFFIRMED

8